## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| Allan Sanders,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>Union Pacific Railroad Co.,<br><br>　　　　　　　　　　Defendant. | Case No. _____<br><br>**COMPLAINT**<br>(JURY TRIAL DEMANDED) |

## INTRODUCTION

1.　　Defendant Union Pacific Railroad Co. has engaged in a pattern and practice of discriminating against employees who suffer from disabilities, in violation of the Americans with Disabilities Acts, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.* ("ADA"). *See*, *e.g.*, *Harris v. Union Pacific Railroad Co.*, No. 8:16-cv-381, Memorandum and Order, Dkt. 307 (D. Neb. Feb. 4, 2019). This includes against Plaintiff Allan Sanders, who Union Pacific has withheld from service for unsubstantiated concerns regarding his health.

## PARTIES

2.　　Sanders is an individual who resides and worked for Union Pacific in Mound Valley, Kansas.

3.　　Union Pacific is a railroad carrier is a railroad carrier engaged in interstate commerce. It is headquartered in this district. Consequently, its human resources department, which is responsible for investigating complaints of disability discrimination, is based in this district; its law department, which is responsible for adopting policies regarding and training its manager's on disability discrimination, is based in this district;

1

and its medical department, which is responsible for evaluating and accommodating its employees' disabilities, is based in this district.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

5.      Venue is proper in this division under 28 U.S.C. § 1391 because Union Pacific is headquartered and the illegal conduct occurred pursuant to policies and procedures that were promulgated by officers who reside in this division.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Sanders's claims occurred in this district.

## FACTUAL ALLEGATIONS

7.      Nearly a decade ago, Union Pacific lobbied the Federal Railroad Administration ("FRA") to adopt medical requirements for railroad employees.

8.      Railroad employees' unions objected to the FRA adopting medical requirement for railroad employees, fearing that the railroads would use the requirements to purge their workforce of older workers.

9.      The FRA sided with the unions and did not adopt the medical requirements for which Union Pacific lobbied.

10.      Union Pacific nevertheless adopted the medical requirements.

11.      Employees now have to disclose specific health conditions.

12.      Disclosure of certain conditions, in turn, results in Union Pacific performing a fitness-for-duty ("FFD") evaluation on the employee.

13.      The FFD evaluation does not include the employee being physically

examined by Union Pacific.

14.     Rather, Union Pacific obtains and reviews the employee's medical records, often without the requisite cause necessary to so do, and decides whether the employee is fit for duty.

15.     Union Pacific has used the FFD evaluations to purge its workforce of older workers.

16.     Sanders had worked for Union Pacific since 1979.

17.     In June of 2018, Sanders was suffering from a bleeding ulcer.

18.     Sanders's bleeding ulcer is a physical impairment that substantially limited his ability to care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

19.     By August of 2018, Sanders recovered and was released to return to work by his doctors.

20.     When Sanders tried to return to work, Union Pacific subjected him to an FFD evaluation.

21.     Union Pacific did not physically examine Sanders.

22.     Rather, Union Pacific merely obtained and reviewed Sanders's medical record, despite not having the requisite cause necessary to so do, and used the information therein to justify issuing restrictions against Sanders.

23.     The restrictions are draconian to the point of being a *de facto* termination.

24.     To the extent any of the restrictions are actually necessary, they could have been accommodated.

25.     Union Pacific not only ignored the opinions of Sanders's doctors but also did not contact a relevant specialist.

## CAUSES OF ACTION

### COUNT I
### DISABILITY DISCRIMINATION, IN VIOLATION OF THE ADA

26.     Section 12112(a) of the ADA prohibits employers from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

27.     At all relevant times, Sanders was an individual with a disability under the ADA.

28.     Sanders is a qualified individual under the ADA.

29.     Union Pacific discriminated against Sanders on the basis of disability when it removed him from service.

30.     Because Union Pacific violated 42 U.S.C. § 12112, Sanders has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount to be determined by the trier of fact. Sanders is also entitled to attorneys' fees and costs incurred in connection with these claims.

31.     Union Pacific committed the above-alleged acts with reckless or deliberate disregard for Sanders's rights. As a result, Sanders is entitled to punitive damages.

### COUNT II
### FAILURE TO ACCOMODATE, IN VIOLATION OF THE ADA

32.     At all relevant times, Sanders was an individual with a disability under the ADA.

33.     Union Pacific was aware of Sanders's disability.

4

34.     Discriminating against a qualified individual with a disability includes:

[N]ot making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]

42 U.S.C. § 12112(b)(5)(A).

35.     If Union Pacific believed that Sanders's disability prevented him from performing any essential function of his job, it had a duty to explore whether a reasonable accommodation existed that would allow Sanders to perform the essential functions of his job.

36.     Union Pacific failed to engage with Sanders in the interactive process, and failed to offer reasonable accommodation to Sanders.

37.     Because Union Pacific violated 42 U.S.C. § 12112, Sanders has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount to be determined by the trier of fact. Sanders is also entitled to attorneys' fees and costs incurred in connection with these claims.

38.     Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Sanders's rights and safety. As a result, Sanders is entitled to punitive damages.

## COUNT III
## IMPERMISSIBLE MEDICAL EXAMINTION, IN VIOLATION OF THE ADA

39.     At all relevant times, Sanders was an individual with a disability under the ADA.

40.     Section 12112(d)(1) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including certain medical examinations

and inquiries.

41.     Section 12112(d)(4) of the ADA prohibits employers from "requir[ing] a medical examination and [from]. . .  mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity"

42.     Union Pacific discriminated against Sanders on the basis of disability by requiring him to undergo a fitness for duty examination, in violation of 42 U.S.C. § 12112(d)(4).

43.     Because Union Pacific violated 42 U.S.C. § 12112, Sanders has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount to be determined by the trier of fact. Sanders is also entitled to attorneys' fees and costs incurred in connection with these claims.

44.     Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Sanders's rights and safety. As a result, Sanders is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Sanders prays for judgment against Union Pacific as follows:

45. That the practices of Union Pacific complained of herein be determined and adjudged to constitute violations of the ADA;

46. For an injunction against Union Pacific and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs,

and usages set forth herein;

47. For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages in an amount to be determined by the trier of fact;

48. For an award of pre-judgment interest, as provided by law;

49. For an award of Sanders's costs, disbursements and attorneys' fees pursuant to law;

50. For all relief available under the ADA;

51. For such other and further relief available by statute; and

52. For such other and further relief as the Court deems just and equitable.

DATED: January 16, 2020

**THE MOODY LAW FIRM**

/s/ Nicholas D. Thompson
Nicholas D. Thompson (*pro hac vice* application forthcoming)
500 Crawford Street, Suite 200
Portsmouth, VA 23704
Phone: (757) 393-4093
Fax: (757) 397-7257
Email: nthompson@moodyrrlaw.com

Corey L. Stull
ATWOOD, HOLSTEN, BROWN
DEAVER & SPIER, PC, LLO
575 Fallbrook Blvd., Suite 206
Lincoln, NE 68521
Email : cstull@atwoodlawyers.com

**COUNSEL FOR PLAINTIFF**