**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

ALLAN SANDERS,

               Plaintiff,

vs.

UNION PACIFIC RAILROAD CO.,

               Defendant.

**4:20cv3023**

**FINAL PRELIMINARY INITIAL JURY**
**INSTRUCTIONS**

**INSTRUCTION NO. 1**
**DUTY**

It will be your duty to decide from the evidence whether the plaintiff is entitled to a verdict against the defendant.  From the evidence, you will decide what the facts are. You are entitled to consider the evidence in the light of your own observations and experiences in life.  You may use reason and common sense to draw deductions from facts established by the evidence. You will then apply those facts to the law which I give you in these and the other instructions.  In that way, you will reach your verdict.  You are the sole judges of the facts; but you must follow the law as stated in my instructions, whether you agree or disagree with the law stated in the instructions.

Do not allow sympathy or prejudice to influence you. The law requires that your verdict be unaffected by anything except the evidence, your common sense, and the law stated in these and other instructions.

Anything that I may say or do during the trial must not be taken by you as an indication of what I think of the evidence or what I think your verdict should be.

1

**INSTRUCTION NO. 2**

**EVIDENCE**

The word "evidence" includes the testimony of witnesses; documents and other things received as exhibits; any facts that have been stipulated, that is, formally agreed to by the parties; and any facts that have been judicially noticed, that is, facts which I say you must accept as true.

Certain things are not evidence. I will list those things for you now:

1.  Statements, arguments, questions and comments by lawyers are not evidence.

2.  Exhibits that are identified by a party but not offered or received in evidence are not evidence.

3.  Objections are not evidence.  Lawyers have a right and sometimes an obligation to object when they believe that the evidence being offered is improper.  You should not be influenced by the objection.  If I sustain an objection to a question or an exhibit, you must ignore the question or the exhibit and must not try to guess what the information might have been.

4.  Testimony and exhibits that I strike from the record or tell you to disregard are not evidence and must not be considered.

5.  Anything you see or hear about this case outside this courtroom is not evidence unless I specifically tell you otherwise during the trial.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only.  That is, it can be used by you only for one particular purpose, and not for any other purpose.  I will tell you when that occurs and instruct you on the purposes for which the item can and cannot be used.  You should also pay particularly close attention

to such an instruction because it may not be available to you in writing later in the jury room.

Finally, some of you may have heard the phrases or terms "direct evidence" and "circumstantial evidence."  Direct evidence is direct proof of a fact, such as testimony by an eyewitness.  Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  You are instructed that you should not be concerned with those terms, since the law makes no distinction between the weight to be given to direct and circumstantial evidence.

**INSTRUCTION NO. 3**

**BENCH CONFERENCES AND RECESSES**

During the trial it may become necessary for me to talk with the lawyers outside your hearing, either by having a bench conference while you are present in the courtroom, or by calling a recess. Please understand that while you are waiting, the court and counsel are working. The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence which govern the trial, and to avoid confusion and error. We will, of course, do what we can keep the number and length of these conferences to a minimum.

**INSTRUCTION NO. 4**
**JURY QUESTIONS**

While evidence is being presented, you are not allowed to raise your hands to ask questions about that evidence.  However, if you do have questions about something you hear during the examination of a witness, you may write your questions down on a piece of paper.  When the attorneys have finished examining that witness, you may submit your written question or questions.  I will review each question with the attorneys.  You may not receive an answer to your question because I may decide that the question is not proper under the rules of evidence.  The attorneys may choose to answer your questions by asking more questions of the witness.  But even if the question is proper, you may not get an immediate answer to your question.  For instance, a witness or an exhibit that you will see later in the trial may answer your question.

**INSTRUCTION NO. 5**
**NOTE-TAKING**

If you wish, you may take notes to help you remember what witnesses said. Notes may be helpful to you because at the end of the trial, you must make your decision based on what you recall of the evidence. You will not have a written transcript to consult, and it may not be practical for the court reporter to read back lengthy testimony. Therefore, you should pay close attention to the testimony as it is given.

If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide this case. Do not let note-taking distract you to the point that you miss hearing other testimony from the witness.

During the trial, documents or other physical items may be received into evidence. At the present, however, you will not be supplied with a list of exhibits which are received in evidence. Therefore, you may wish to make notes about the exhibits, especially their description and number, so that you can refer to those exhibits while you are deliberating. When we take our recess each day for the lunchtime break and when we take our recess each night, please take your notes to the jury room and leave your notes there. The courtroom deputy will take custody of your notes and secure them.

No one will read your notes but you. Your notes will be destroyed after the trial is over.

6

**INSTRUCTION NO. 6**

**PREPONDERANCE OF EVIDENCE**

Your verdict depends on whether you find certain facts have been proved by a preponderance of evidence.  In order to find that a fact has been proved by a preponderance of evidence you must find that it is more likely true than not true.  It is determined by considering all of the evidence and deciding which evidence is more believable.

You have probably heard of the phrase "proof beyond a reasonable doubt."  That is a stricter standard which applies in criminal cases.  It does not apply in civil cases such as this.  You should, therefore, put it out of your minds.

**INSTRUCTION NO. 7**
**WITNESSES**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, consider the witness's intelligence, the opportunity the witness had to have seen or heard the things testified about, a witness's memory, any motives that witness may have for testifying a certain way, the manner of the witness while testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things.  You need to consider therefore whether a contradiction is an innocent mis-recollection or lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only a small detail.

## INSTRUCTION NO. 8
## CONDUCT OF THE JURY

To ensure fairness, you as jurors must obey the following rules:

First, do not talk among yourselves about this case, or about anyone involved with this case, until the end of the case when you go to the jury room to decide on your verdict.

Second, do not talk with anyone else about this case, or about anyone involved with it, until the trial has ended, and you have been discharged as jurors.

Third, when you are outside this courtroom, do not let anyone tell you anything about this case or anyone involved in it until the trial has ended and I have accepted your verdict.  If someone should try to talk to you about this case during the trial, please report it to me or to the deputy clerk.

Fourth, during the trial you should not talk with or speak to any of the parties, lawyers, or witnesses involved in this case—you should not even pass the time of day with any of them.  If a person from one side of the lawsuit sees you talking to a person from the other side—even if it is simply to pass the time of day—it might arouse an unwarranted suspicion about your fairness.  If a lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or encounter each other elsewhere while this trial is taking place, do not think he or she is being rude.  Those persons are not supposed to talk or visit with you, either.

Fifth, you must decide this case on the basis of evidence presented in the courtroom.  Therefore, do not read any news stories or articles about the case, or about anyone involved with this case, or listen to any radio or television reports about the case or about anyone involved with it. In fact, until the trial is over you should probably avoid reading any newspapers or news journals and avoid listening to any TV or radio

9

newcasts. There might not be any news reports of this case, but, if there are, you might find yourself inadvertently reading or listening to something before you realize what you are doing.

Sixth, do not do any research—on the Internet, in libraries, in the newspapers, or in any other way—or make any investigation about this case on your own. Do not use or refer to a dictionary or any law books concerning any aspect of this case, including any evidence introduced. Do not visit the scene of any incident mentioned in this case and do not use Internet programs or other devices to electronically search for or view any place discussed in the testimony. Also, do not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge.

Seventh, do not form an opinion about any fact or issue in the case until you have received all of the evidence, have heard arguments of counsel, have been instructed as to the law of the case, and have retired to the jury room. Consequently, do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and have discussed the evidence with the other jurors.

**INSTRUCTION NO. 9**

**OUTSIDE COMMUNICATIONS AND RESEARCH**

You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom because the parties must have an opportunity to respond to any information you consider in deciding this case.  This means that during the trial you must not conduct any independent research about this case, the matters in the case, and the individuals or entities involved in the case.  In other words, you should not consult dictionaries or reference materials, search Internet, blogs, chat rooms, social networking websites including, but not limited to, Facebook, Twitter, Instagram, LinkedIn, TikTok, Reddit, or YouTube, or use your cell phones or any other electronic tools or devices to obtain information about this case or to help you decide the case.

Until you retire to deliberate, you may not discuss this case with anyone, even your fellow jurors.  After you retire to deliberate, you may begin discussing the case with your fellow jurors, but you cannot discuss the case with anyone else until you have returned a verdict and the case is at an end.  I hope that for all of you this case is interesting and noteworthy.  However, until you have returned a verdict and the case is at an end, you must not talk to anyone or communicate with anyone about the case by any means, electronic or otherwise.  This includes communications with your family and friends.  Such communication would compromise your fairness as jurors and may require your removal from the case and a retrial of this matter at considerable expense to the parties.

11

**INSTRUCTION NO. 10**

**OUTLINE OF TRIAL**

The trial will proceed in the following manner:

First, the attorney for the plaintiff may make an opening statement. Next, the attorney for the defendant may make an opening statement.  An opening statement is not evidence but is an outline of what the party intends to prove, a summary of what the attorney expects the evidence to be.

The plaintiff's attorney will then present evidence through a direct examination of a witness.  The defendant's attorney may then cross-examine that witness.  After the cross-examination, the plaintiff's attorney may ask additional questions on re-direct.  The defendant's attorney may also ask questions on re-cross.  After all of the plaintiff's witnesses have been presented, the plaintiff will rest.

The defendant's attorney will then present the defendant's case.  The defendant may present evidence through direct examination of witnesses and plaintiff's attorney may cross-examine those witnesses.  Re-direct and re-cross examinations may also take place.

After the presentation of evidence is completed, the attorneys will make their closing arguments to summarize and interpret the evidence for you.  Just as with opening statements, these closing arguments are not evidence.  I will then instruct you further on the law.  After that, you will retire to deliberate on your verdict.

## INSTRUCTION NO. 11
## STATEMENT OF THE CASE

This is a civil case entitled Allan Sanders, Plaintiff v. Union Pacific Railroad Co., Defendant, Case Number 4:20cv3023.  This is an action involving alleged discrimination on the basis of a disability or a record of disability, and failure to accommodate under the Americans with Disabilities Act.

The plaintiff, Mr. Sanders filed a complaint in this case.  A complaint is the initial pleading in a civil case and sets forth a claim for relief or some remedy.  The Plaintiff asserts claims under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 et seq.  In this case, the plaintiff claims that the defendant discriminated against him in violation of the ADA in two ways:

1. By prohibiting him from returning to work after he took medical leave; and

2. By not accommodating his disability after he took medical leave.

Sanders began working for Union Pacific on May 1, 1979. Sanders held various positions before becoming a foreman general in the car department in Parsons, Kansas, which is the last position he held at Union Pacific.  In June 2018, Sanders was treated at an emergency room for what he later learned was a bleeding ulcer. Sanders underwent surgery to repair the bleeding ulcer. While at the hospital, he suffered a cardiac arrest and had to be resuscitated.  He was also diagnosed with acute kidney failure and chronic kidney disease at that time.  Sanders informed Union Pacific of his hospitalization and requested a medical leave of absence ("medical leave") which Union Pacific granted. Pursuant to the later release by his doctors, Sanders attempted to return to work.  Union Pacific's medical director ultimately determined that Sanders could return to work but with significant medical restrictions.

13

Union Pacific denies the plaintiff's allegations and asserts affirmative defenses of business necessity and direct threat. Union Pacific contends the plaintiff's medical condition posed a significant risk to his or to others' health and/or safety and the risk could not have been eliminated or reduced by a reasonable accommodation.

It will be your duty to decide from the evidence whether Sanders is entitled to a verdict against Union Pacific and how much compensation, if any, Sanders is entitled to recover.

## INSTRUCTION NO. 12
## UNCONTROVERTED FACTS

The parties have agreed that the following may be accepted as established facts for purposes of this case:

1.      Defendant Union Pacific Railroad Company ("Union Pacific") is an "employer" for purposes of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA").

2.      Plaintiff Allan Sanders ("Sanders") was formerly an "employee" (as defined by the ADA) of Union Pacific.

3.      On May 1, 1979, Sanders began working for the Missouri, Kansas, and Texas Railroad or "Katy Railroad," which eventually became part of Union Pacific.

4.      Sanders held various positions before becoming a foreman general in the car department in Parsons, Kansas, which the last position he held at Union Pacific.

5.      In June 2018, Sanders was taken by ambulance to the emergency room for what he later learned was a bleeding ulcer.

6.      Sanders underwent surgery to repair the bleeding ulcer that was performed by Dr. Charles Y. Ro, MD, a general surgeon.

7.      Sanders was required to undergo a fitness for duty evaluation before returning to work after this health incident.

8.      Dr. John Charbonneau, an Associate Medical Director for Union Pacific was responsible for evaluating Sanders and determining if his health condition necessitated any functional work restrictions.

9.      Union Pacific evaluated Sanders's health issues separately and cleared Sanders to return to work for all but one issue.

15

10.     Union Pacific issued the following functional work restrictions on Sanders as a result of that one issue:

a.     He could not perform work involving more than light physical exertion (as defined by the U.S. Department of Labor), not to lift over 10 pounds frequently or 20 pounds occasionally. He was most appropriately suited for office jobs or similar work only.

b.     He could not perform prolonged work in conditions of high heat and humidity, or excessive cold.

11.     Union Pacific Railroad Company paid the following premiums for benefits for employees that held the same position as Mr. Sanders:

a.     In 2018, Union Pacific Railroad Company paid $1,562.51 per month for an annual total of $ 18,750.12;

b.     In 2019, Union Pacific Railroad Company paid $1,585.99 per month for an annual total of $ 19,031.88;

c.     In 2020, Union Pacific Railroad Company paid $1,585.99 per month for an annual total of $ 19,031.88;

d.     In 2021, Union Pacific Railroad Company paid $1,676.07 per month for an annual total of $ 20,112.84

12.     Mr. Sanders continued to receive the benefits referred to in Paragraph 10 from Union Pacific Railroad Company until December 31, 2020.

13.     Union Pacific Railroad Company would have made the following contributions for Mr. Sanders to the Railroad Retirement Board had he been reinstated:

a.     Railroad Retirement Tier 1 (6.20%) $5,977 annually

b.     Railroad Retirement Tier 2 (13.10%) $12,627 annually

16

14.     The pre-tax wages for the three employees above Plaintiff on the seniority roster are as follows:

|  | Employee A | Employee B | Employee C |
|---|---|---|---|
| 2017 | $74,014.22 | $91,755.31 | $91,724.57 |
| 2018 | $78,582.42 | $108,651.14 | $98,958.03 |
| 2019 | $79,434.72 | $111,910.46 | $98,950.95 |

15.     The pre-tax wages for the three employees below Plaintiff on the seniority roster are as follows:

|  | Employee A | Employee B | Employee C |
|---|---|---|---|
| 2017 | $92,787.42 | $74,676.72 | $95,235.29 |
| 2018 | $97,690.53 | $82,714.77 | $100,757.46 |
| 2019 | $59,762.12 | $80,060.12 | $100,331.54 |

**INSTRUCTION NO. 13A**

**ADA DISABILITY DISCRIMINATION**

In order to recover on his claim of disparate-treatment disability discrimination, the plaintiff must prove all of the following elements by a preponderance of evidence:

1.      The plaintiff had a disability as that term is defined in Instruction No. 15A.

2.      That he could have performed the essential functions of his job (as defined in Instruction No. 21A) with or without accommodation.

3.      That the plaintiff's disability was the "but-for" cause, as defined in Instruction No. 13B, of the defendant's refusal to allow the plaintiff to return to duty.

If all of the above elements have been proved and the defendant has not proved direct threat or business necessity (Instruction Nos. 17A & 18A), then your verdict must be for the plaintiff on this claim. If any of the above elements have not been proved, then your verdict must be for the defendant on this claim.

**INSTRUCTION NO. 13B**
**BUT-FOR CAUSATION**

The disability, is a "but for" cause of an employment decision if the employment decision would not have occurred without it, but it is not a "but-for" cause if the employment decision would have occurred without the disability.  "But for" causation does not require that disability was the only reason for the decision made by the defendant.

## INSTRUCTION NO. 15A
## DISABILITY

The term "disability" includes:

1.      A physical or mental impairment that substantially limits one of the major activities of life, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working; or substantially limits, operation of a major bodily function, including but not limited to, functions of the respiratory, circulatory, cardiovascular, or musculoskeletal functions. The operation of a major bodily function also includes the operation of an individual organ within a body system.

2.      A record of such an impairment. The determination of whether the plaintiff is disabled must be made without reference to measures that mitigate plaintiff's alleged impairment including medication. An individual has a record of an impairment "if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."

3.      Or, being regarded as having an impairment. An individual meets the requirement of being regarded as having such an impairment if the individual establishes that he or she has been subjected to an adverse employment action because of an actual or perceived physical or mental impairment, whether or not the impairment limits or is perceived to limit a major life activity.

20

**INSTRUCTION NO. 16A**

**ELEMENTS OF CLAIM:  REASONABLE ACCOMMODATION**

The ADA requires employers to make reasonable accommodations to allow disabled individuals to perform the essential functions of their positions.  Reasonable accommodations must be made for otherwise qualified individuals who are actually disabled or have a record of impairment.  The ADA provides that the concept of "reasonable accommodation" may include but is not limited to: "(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."  The employer need not reallocate or exempt an employee from the essential functions of a job as defined in Instruction No. 21A.

To succeed on this claim, plaintiff must prove, and your verdict must be for plaintiff and against defendant, if all of the following elements have been proved:

*First*, the plaintiff had a disability or record of disability as defined in Paragraphs 1 or 2 of Instruction No. 15A; and

*Second*, the defendant knew of the plaintiff's disability or record of disability; and

*Third*, the plaintiff could have performed the essential functions of the foreman general carman position at the time, if the plaintiff had been provided with an accommodation; and

*Fourth*, providing accommodations would have been reasonable; and

*Fifth*, the defendant failed to provide any reasonable accommodation.

21

If all of the above elements have been proved, and the defendant has not proved direct threat or business necessity (Instruction Nos. 17A & 18A), then your verdict must be for the plaintiff on this claim.  If any of the above elements has not been proved, then your verdict must be for the defendant.

**INSTRUCTION NO. 17A**

**ELEMENTS OF DEFENSE: "DIRECT THREAT"**

Your verdict must be in favor of defendant and against plaintiff if the defendant has proved that:

*First*, the defendant held the plaintiff out of service and/or prohibited him from returning to service because the plaintiff posed a direct threat to the health or safety of the plaintiff or others in the workplace; and

*Second*, such direct threat could not be eliminated by reasonable accommodation. A direct threat means a significant risk of substantial harm to the health or safety of the person or other persons that cannot be eliminated by reasonable accommodation. The determination that a direct threat exists must be based on an individualized assessment of the plaintiff's ability to safely perform the essential functions of the job, at the time of the decision.

In determining whether a person poses a direct threat, you must consider: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the likely time before the potential harm occurs.

**INSTRUCTION NO. 18A**
**BUSINESS NECESSITY**

Business necessity is a defense to a claim of discrimination under the ADA.  If you find that the defendant's application of standards, criteria, or policies have the effect of screening out or otherwise denying a job or benefit to qualified individuals with plaintiff's disability, the defendant must prove, by a preponderance of the evidence, that the standard, criterion, or policy:

1. is uniformly applied;

2. is job-related for the foreman general position;

3. is consistent with business necessity; and

4. cannot be met by a person with the plaintiff's disability even with a reasonable accommodation.

To show that the qualification standards, tests, selection criteria, or policies are "consistent with business necessity" the employer must show that they substantially promote the business's needs.

If you find that each of the elements on which the plaintiff has the burden of proof has been proved, but you also find that the defendant has proved this affirmative defense, your verdict should be for the defendant.

24

**INSTRUCTION NO. 19A**
**"MAJOR LIFE ACTIVITIES" DEFINED**

Major life activities include the operation of major bodily functions. "Major activities of life" include such activities as caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, working, and as further defined in Instruction No. 15A.

An impairment that limits the "major life activity" of working must significantly restrict the plaintiff's ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable skills and abilities.

**INSTRUCTION NO. 20**
**"SUBSTANTIALLY LIMITS" DEFINED**

In determining whether the plaintiff's impairment substantially limits the plaintiff's ability in a major life activity, you should compare the plaintiff's ability to perform the activity to most people in the general population.  In doing so, you may consider the conditions under which the plaintiff performs the major life activity, the manner in which the plaintiff performs the major life activity, and the length of time it takes the plaintiff to perform the major life activity.

It is not the name of an impairment or a condition that matters, but rather the effect of an impairment or condition on the life of a particular person.

## INSTRUCTION NO. 21A
### ESSENTIAL FUNCTIONS OF THE JOB

The phrase "essential functions" means the fundamental job duties of the employment position the plaintiff holds or for which the plaintiff has applied. "Essential functions" does not include the marginal functions of the position.

In determining whether a job function is essential, you should consider the following factors: (1) The employer's judgment as to which functions of the job are essential; (2) written job descriptions; (3) the amount of time spent on the job performing the function in question; (4) consequences of not requiring the person to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of persons who have held the job; (7) the current work experience of persons in similar jobs; (8) whether the reason the position exists is to perform the function; (9) whether there are a limited number of employees available among whom the performance of the function can be distributed; and (10) whether the function is highly specialized and the individual in the position was hired for his expertise or ability to perform the function.

No one factor is necessarily controlling. You should consider all of the evidence in deciding whether a job function is essential.

**INSTRUCTION NO. 22A**
**INTERACTIVE PROCESS**

Once an employer is aware of an employee's disability and of the need for an accommodation, the employer must discuss with the employee whether there is a reasonable accommodation that will permit him to perform the job. After the interactive process is initiated, both the employer and the employee must cooperate in this interactive process in good faith. Neither party can win this case simply because the other did not cooperate in this process, but you may consider whether a party cooperated in this process when deciding whether a reasonable accommodation existed.

An employee must show that there was an accommodation available that would have allowed him to perform the essential functions of the job. If no accommodation was available an employer is not liable for failing to engage in the interactive process. To succeed on a failure to accommodate claim, an employee must request a reasonable accommodation unless the employee can show it was futile for him or her to ask for an accommodation. An employee's subjective belief about the futility of initiating the interactive process will not, by itself, relieve him or her of that obligation. To show futility, plaintiff must prove defendant foreclosed him from making a request for reasonable accommodation through its policies or explicit actions.

**INSTRUCTION NO. 23**
**EXPLANATORY: AGENCY**

A corporation acts only through its agents or employees and any agent or employee of a corporation may bind the corporation by acts and statements made while acting within the scope of the authority delegated to the agent by the corporation, or within the scope of his or her duties as an employee of the corporation.

**INSTRUCTION NO. 24**

**CORPORATE PARTY**

All of the parties to a lawsuit are entitled to the same fair and impartial consideration, whether they are corporations, governmental units, or individuals.

**INSTRUCTION NO. 25**

**EXPLANATORY: BUSINESS JUDGMENT**

You may not return a verdict for the plaintiff just because you might disagree with the defendant's decision to terminate the plaintiff's employment or believe it to be harsh or unreasonable.

## INSTRUCTION NO. 26A
### DAMAGES

If you find in favor of the plaintiff on his claim for disability discrimination, as instructed in Instruction No. 13A, or his claim for failure to accommodate as instructed in Instruction No. 16A, and you find against the defendant on its affirmative defense, as instructed in Instruction No. 17A & 18A, then you must award the plaintiff such sum as you find will fairly and justly compensate the plaintiff for any damages you find the plaintiff sustained as a direct result of the defendant's decision not to return him to duty.  The plaintiff's claim for damages for a violation of the ADA includes distinct types of damages and you must consider them separately.

First, you must determine the amount of any wages and fringe benefits the plaintiff would have earned in his employment with the defendant if he had not been withheld from service when he was ready to return to work through the date of your verdict, minus the amount of earnings and benefits that the plaintiff received from other employment during that time.

Second, you must determine the amount of any other damages sustained by the plaintiff, such as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.  You must enter separate amounts for each type of damages in the verdict form and must not include the same items in more than one category.

Third, you may also award separately a monetary amount equal to the present value of any future wages and benefits that the plaintiff would reasonably have earned from Union Pacific had Union Pacific not held him out of service.

32

You are also instructed that the plaintiff has a duty under the law to "mitigate" his damages—that is, to exercise reasonable diligence under the circumstances to minimize his damages.  Therefore, if the defendant proves that the plaintiff failed to seek out or take advantage of an opportunity that was reasonably available to him, you must reduce his damages for lost wages by the amount he reasonably could have avoided if he had sought out or taken advantage of such an opportunity.

Remember, throughout your deliberations, you must not engage in any speculation, guess, or conjecture and you must not award damages under this Instruction by way of punishment or through sympathy.

**INSTRUCTION NO. 27**
**ADA CLAIM:  NOMINAL DAMAGES**

If you find in favor of the plaintiff under Instruction Nos. 13A or 16A, and against

defendant under Instruction Nos. 17A or 18A, but you do not find the plaintiff's damages

have monetary value, then you must return a verdict for the plaintiff in the nominal amount

of One Dollar ($1.00).