IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| Allan Sanders,<br><br>             Plaintiff,<br><br>vs.<br><br>Union Pacific Railroad Company,<br><br>             Defendant. | **4:20CV3023**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the defendant's motion for judgment as a matter of law ("JAML"), Filing No. 124. This action for disability discrimination in employment and failure to accommodate under the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12112, was tried to a jury from February 15, 2022, to February 22, 2022. The jury found in favor of the plaintiff and awarded Sanders $375,231.98 in lost wages to the date of the verdict; $549,527.36 in future lost wages and benefits; and $98,665.00 in other damages. Filing No. 114, Verdict. The Court entered judgment on the verdict on February 25, 2022. Filing No. 120.

U.P. contends it is entitled to JAML on Sanders's disparate treatment claim because Sanders has failed to offer any evidence of discriminatory intent on the part of U.P. It argues it is entitled to summary judgment on Sanders's failure to accommodate claim because Sanders never requested an accommodation. U.P. also contends it is entitled to JAML on its direct threat defense.

U.P. argues the evidence adduced at trial does not establish (1) that Sanders is a disabled person as defined by the ADA; (2) that he has a record of disability; or (3) that

1

he was regarded as disabled.[1]  U.P. next contends the evidence at trial does not show that Sanders is qualified under the ADA.  In connection with that argument, U.P. argues that the evidence shows that the essential functions of Sanders's job included lifting 86-pound knuckles (and other objects over 50 pounds) and performing other demanding, manual labor outdoors and in extreme weather.  It also contends that Sanders's own physician, as well as U.P.'s medical department, reasonably restricted Sanders from essential functions of his job.  U.P. also contends that Sanders has not presented evidence that creates an inference of discrimination and has not shown evidence of discriminatory intent.  U.P. also contends it is entitled to judgment as a matter of law on Sanders's failure to accommodate claim, contending that It is the employee's "responsibility to formally request an accommodation

U.P. also argues that it is entitled to JAML its direct threat defense.  It argues it has shown that U.P.'s decision that Sanders posed a direct threat because he lacked the aerobic capacity to perform his job was objectively reasonable.  It contends it reasonably relied on Dr. Charbonneau's analysis of the medical records and reasonable judgment.

II.     LAW

A motion for summary judgment should be denied unless "a reasonable jury would not have a legally sufficient evidentiary basis" to support the verdict.  *Masters v. City of Indep., Missouri*, 998 F.3d 827, 835 (8th Cir. 2021) (quoting *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012)).  Review is "highly deferential" to the jury verdict, with all

---

[1] U.P.'s continuing reliance on the proposition that Sanders is not disabled is puzzling since U.P. terminated his employment because its medical department determined he was not physically capable of working.  At the same time, it argues that Sanders is not qualified to work at his position because of his physical health.

reasonable inferences drawn in favor of the verdict. *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 646 (8th Cir. 2022).

In ruling on a motion for judgment as a matter of law, the Court "draw[s] all reasonable inferences in favor of [the plaintiffs] without making credibility assessments or weighing the evidence." *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 916 (8th Cir. 2017), *as corrected* (Aug. 14, 2017), *as corrected* (Aug. 14, 2017) (quoting *Arabian Agric. Servs. Co. v. Chief Indus., Inc.*, 309 F.3d 479, 482 (8th Cir. 2002)). A defendant's motion for judgment as a matter of law should not be granted unless all the evidence points one way and is susceptible of no reasonable inferences sustaining the plaintiff's position. *Catipovic v. Peoples Cmty. Health Clinic, Inc.*, 401 F.3d 952, 956 (8th Cir. 2005). If the record contains no proof beyond speculation to support the verdict, then judgment as a matter of law is appropriate. *Gruttemeyer*, 31 F.4th at 646.

Rule 50 empowers the court to "direct the entry of judgment as a matter of law," if no reasonable juror could have decided for the prevailing party, and also affords the court discretion to order a new trial. *See* Fed. R. Civ. P. 50(b)(2)-(3). A new trial may be granted "if the verdict is against the weight of the evidence and allowing it to stand would result in a miscarriage of justice." *Structural Polymer Grp., Ltd. v. Zoltek Corp.*, 543 F.3d 987, 991 (8th Cir. 2008).

A plaintiff can prevail in an action under the ADA if he establishes that he: "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action because of [his or] her disability." *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 845 (8th Cir. 2015) (citation omitted). A disability is "a physical or mental impairment that substantially limits one or more of the major life

3

activities." 42 U.S.C. § 12102(1)(A). Under the ADAAA's definition of "disability," "substantially limits" is not a demanding standard. 29 C.F.R. § 1630.2(j)(1)(i). "An impairment need not prevent, or [even] significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

An employer bears the burden of proof on the ADA direct threat defense as it is considered an affirmative defense. *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571 (8th Cir. 2007). The defense "must be 'based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence,' and upon an expressly 'individualized assessment of the individual's present ability to safely perform the essential functions of the job,' reached after considering, among other things, the imminence of the risk and the severity of the harm portended." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86 (2002) (quoting 29 CFR § 1630.2(r) (2001)).

The ADA requires an interactive process between the employer and the employee—a cooperative dialogue to identify the precise limitations resulting from the disability and "explore the existence and feasibility of reasonable accommodations." *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114–1116 (9th Cir. 2000).

4

III. DISCUSSION

The Court finds the evidence adduced at trial is sufficient to support the jury's verdict. The evidence in this case overwhelmingly demonstrates that defendant U.P. discriminated against Allan Sanders because of his disability. Sanders has presented evidence that shows he was disabled, had a record of a disability, or was regarded as disabled, the disability substantially limited a major life activity, that he was qualified to perform the essential functions of his job; and that he was terminated because of his disability or record of disability.

The evidence adduced at trial is sufficient to support the jury's verdict. There was evidence presented at trial from which a jury could have determined that Sanders was disabled in each of the three ways the ADA broadly defines the term. *See* 42 U.S.C. § 12102(1). Sanders presented evidence that he was actually disabled because he had suffered from a GI bleed that resulted in a cardiac event, and he had hypertension, and knee and back issues. He has also shown a record of a disability covering those conditions. Moreover, U.P.—in particular, its medical director, Dr. John Charbonneau— clearly regarded Sanders as disabled by improperly relying on the failed Bruce protocol test and by incorrectly assuming that Sanders suffered from cardiovascular limitations because a bleeding ulcer had caused him to bleed out, necessitating cardiovascular resuscitation.

The evidence was similarly sufficient to prove that Sanders could perform the essential functions of his job, with or without reasonable accommodations. The jury heard evidence showing that Sanders could perform each of the functions in his role as a non-working foreman in the carman department. Sanders's primary responsibility was to

5

supervise carmen—the employees who fix broken trains. He testified he only rarely engaged in physical activities and even more rarely carried heavy objects like knuckles. The jury could have easily concluded that Sanders could do all of the activities required of him. It could also have determined that any strenuous physical activities required by the job were nonessential functions that could have been addressed through reasonable accommodations. It stands to reason that once promoted to a manager or foreman, an employee is not required to perform all of the strenuous physical duties of those he supervises. In other words, a jury could infer from a promotion that the employer values skills other than physical labor.

The Court finds there was ample evidence in this case from which a jury could infer discriminatory intent. The evidence shows that U.P. intentionally discriminated against Sanders by unreasonably imposing a Bruce-protocol treadmill test requirement on Sanders and then misinterpreting the incomplete and unreliable Bruce-protocol results.

Also, evidence supports the jury's finding that U.P. failed to accommodate Sanders. Contrary to U.P.'s contention, evidence in the record establishes that Sanders did request an accommodation. He testified he asked Dr. Charbonneau to let him take an alternative to the Bruce Protocol treadmill test, but Dr. Charbonneau refused. The importance of that testimony to the jury's determination is reflected in the jury's question to the Court. Filing No. 112. The jury asked whether "examinations" in the Instruction 16A that states "'reasonable accommodation' may include 'appropriate adjustment or modifications of examinations'", to which the Court answered "yes." *Id.* The jury apparently credited Sanders's testimony that he could not complete a treadmill test because of the severe osteoarthritis in his knees. A reasonable jury could have easily

6

inferred that Sanders could have passed an alternative test. The evidence is also sufficient to show that Sanders did not need any on-the-job accommodations, but he did, there was sufficient evidence to prove that (1) additional requests would have been futile and (2) Union Pacific's failure to engage in the interactive process stymied the identification of other reasonable accommodations, such as job restructuring. There is no evidence of any interactive process.

Similarly, U.P. did not establish as a matter of law that it was entitled to a business necessity or direct threat defense. U.P. did not establish that Sanders posed "a significant risk of substantial harm to the health or safety of [himself] or others that [could not] be eliminated or reduced by reasonable accommodation." 42 U.S.C. § 12111(3); 29 C.F.R. § 1630.2(r). To succeed on that affirmative defense, U.P. was required to disprove that a reasonable accommodation (an alternative test) would have resolved any safety or business-related issues. This U.P. did not do.

U.P. has not presented evidence of the sort of conduct necessary to establish a business necessity or direct threat defense. It has not shown it exercised "reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence," nor did it employ an "individualized assessment" of Sanders's "present ability to safely perform the essential functions of the job" based on "the imminence of the risk and the severity of the harm portended." *Chevron U.S.A. Inc.*, 536 U.S. at 86 (quoting 29 C.F.R. § 1630.2(r). Essentially, the evidence shows that Sanders's heart was fine. But Union Pacific refused to listen to Sanders, refused to listen to his doctors, refused to call his doctors, refused to examine him consistent with his heart condition, and refused to authorize an alternative to the Bruce Protocol test. It issued

7

restrictions on Sanders that far exceeded the recommendations of his three treating doctors.

Further, the Court rejects U.P.'s argument (characterized by the plaintiff as a "company-doctor defense") that its reliance on Dr. Charbonneau's medical opinion absolves it from liability. Dr. Charbonneau was employed by U.P. The jury apparently discredited Dr. Charbonneau's opinion and credited the plaintiff's expert's opinion that Dr. Charbonneau's medical judgment on this matter was unreasonable. There is evidence from which a jury could find that Dr. Charbonneau, acting on false or incorrect beliefs and/or biases, unreasonably found Sanders unfit for duty based on a cardiac event. U.P. is accountable for those actions.

The Court agrees with the plaintiff that

> This case is not about second-guessing Union Pacific's medical judgment. It is a case about an employer unreasonably ignoring the unanimous medical judgment of every disinterested doctor, applying arbitrary and discriminatory restrictions on an employee because of his disability, refusing to consider any reasonable accommodations, and justifying its actions through a flurry of *ex post facto* justifications that have no basis in evidence or fact.

Filing No. 151, Plaintiff's Response Brief at 3.

Because the evidence overwhelmingly supports the jury's verdict, the Court finds U.P.'s motion for judgment as a matter of law should be denied. The jury's verdict is supported by the evidence and by reasonable inferences that can be drawn from that evidence. Accordingly, the Court finds U.P.'s motion for judgment as a matter of law should be denied.

IT IS ORDERED:

1. The defendant's motion for judgment as a matter of law (Filing No. 124) is denied.

2. A final judgment in conformity with this Memorandum and Order will be entered.

Dated this 17th day of August, 2022.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge