IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| Allan Sanders<br><br>                      Plaintiff,<br><br>        vs.<br><br>Union Pacific Railroad Company,<br><br>                      Defendant. | **4:20CV3023**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the parties' cross motions to amend the judgment, Filing Nos. 123 and 127.

I.      BACKGROUND

This action for disability discrimination in employment and failure to accommodate under the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101, was tried to a jury from February 15, 2022, to February 22, 2022.  The jury found in favor of the plaintiff, Allen Sanders, on his claims against defendant Union Pacific Railroad Company ("U.P." or "the Railroad") and awarded Sanders $375,231.98 in lost wages to the date of the verdict; $549,527.36 in future lost wages and benefits; and $98,665.00 in other damages.  Filing No. 114, Verdict.  The Court entered judgment on the verdict on February 25, 2022.  Filing No. 120.

The plaintiff seeks to amend the judgment under Fed. R. Civ. P. 59(e) to include $48,972.30 in prejudgment interest for back pay and lost benefits, $12,876.97 in prejudgment interest on his compensatory damages representing interest at the rate of 3.51,[1] compounded monthly from August 27, 2018 (the day that U.P. did not let Sanders

---

[1] That rate is the average prime rate during the relevant period.  *See* Filing No. 126, Plaintiff's Brief at 6 n.1; https://fred.stlouisfed.org/series/DPRIME.

1

return to work) to  February 25, 2022 (the date that the Court entered judgment).[2]  He also seeks an award of $181,682.00 to offset the increased tax burden that would result from receiving his lost wages as a lump sum.

Defendant U.P. concedes that Sanders is entitled to prejudgment interest on his back pay and benefits, but challenges Sanders's proposed rate and method of compounding.  Union Pacific argues that the Court should use a Treasury rate instead of the average prime rate and annual rather than monthly compounding.  U.P. also contends that tax-related damages should not be awarded, arguing that the Eighth Circuit Court of Appeals would follow the D.C. Circuit in declining to award any such damages.  *See* *Dashnaw v. Pena*, 12 F.3d 1112 (D.C. Cir. 1994); *Fogg v. Gonzales*, 492 F.3d 447 (D.C. Cir. 2007).  U.P. does not challenge the calculations of Sanders's tax-related damages.

In U.P.'s motion to amend the judgment, U.P. challenges the award of front pay. It argues that the Court should not order a front pay award without a post-trial hearing on reinstatement.  Alternatively, it argues that any award of front pay should be reduced from the jury's finding of $549,527.36 (which it contends reflects seven years of front pay), to one year of front pay or $78,503.90 (to reflect the plaintiff's statement to Dr. Charbonneau that he intended to retire in 11 months) or to two years of front pay (consistent with his testimony at deposition that he intended to retire at age 65).  U.P. also contends that any front pay award must be reduced by an appropriate discount rate to reflect the present value of lost future earnings.   Union Pacific requests 3.5% discount rate.[3]

---

[2] *See* Filing No. 126, Plaintiff's Brief at 6 n.2; https://fred.stlouisfed.org/series/DPRIME.

[3] U.P. contends the present value of $549,527.36 assuming a 3.5% discount rate is $431,923.54.  Filing No. 128, Defendant's Brief at 3 & n.2; https://www.calculator.net/present-value-calculator.html

The plaintiff argues that the evidence at trial fully supports the front pay award, and he also argues that the jury was instructed on present value in the jury instructions.

At trial, Sanders testified he wanted to continue working until he reached age 70. Sanders testified that he wants his job back, but U.P. has never offered him reinstatement. Sanders's former position as a foreman general in the carman department has been eliminated. Also, Sanders's supervisor testified for the Railroad at the trial.

The jury instructions charged the jury to award "a monetary amount equal to the present value of any future wages and benefits that the plaintiff would reasonably have earned from Union Pacific had Union Pacific not held him out of service." Filing No. 118, Jury Instructions, Instruction No. 26A, at 32. U.P. did not object to this instruction.

Sanders will receive a lump-sum award of $924,759.34 for his economic damages, i.e., back pay, front pay, and benefits. Filing No. 120, Judgment. Sanders presented evidence to support his contention that he will have to pay more in taxes as a result of the lump-sum distribution. Filing No. 126-1, Index of Evid. Sanders has shown that he will pay $181,682.00 more in state and federal taxes on the lump-sum distribution than he would have paid if he had received the money in the ordinary course of employment over a number of years. Filing No. 126-2, Declaration of Jeffrey B. Opp ("Opp Decl."); Filing No. 126-4, Opp Decl., Ex. 2, Tax Rate Calculations.

II.     LAW

A.     Prejudgment Interest

Whether and at what rate pre-judgment interest should be awarded are questions of federal law where, as here, the cause of action arises from a federal statute. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1330 (8th Cir. 1995). Federal courts

routinely award prejudgment interest in discrimination cases.  *See, e.g., Winter v. Cerro Gordo Cnty. Conservation Bd.*, 925 F.2d 1069, 1072 (8th Cir. 1991); *Hudlow v. City of Rogers, Arkansas*, No. CV 12-5168, 2014 WL 12638859, at *2 (W.D. Ark. Apr. 29, 2014).  "Generally, prejudgment interest is awarded when the amount is reasonably ascertainable and to make the claimant whole because he or she has been denied use of the money."  *Id.*  Awarding pre-judgment interest serves to compensate prevailing parties for the true costs of money damages incurred. *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986).

Federal courts have used a number of standards for determining the rate that is appropriate under the circumstances, including the current prime rate or a particular state's statutory rate.  *Hudlow v. City of Rogers, Arkansas*, No. CV 12-5168, 2014 WL 12638859, at *2 (W.D. Ark. Apr. 29, 2014).  Courts have approved the average prime rate and monthly compounding in computing interest. *See, e.g.*, *Swope v. Siegel-Robert, Inc.*, 243 F.3d 486, 497 (8th Cir. 2001) ("The purpose of the prejudgment interest is to fully compensate plaintiffs for their loss"); *Mlsna v. Union Pac. R.R. Co.*, No. 18-CV-37-WMC, 2021 WL 3367245, at *8 (W.D. Wis. Aug. 3, 2021);[4] *Ortega v. Chicago Bd. of Educ.*, 280 F. Supp. 3d 1072, 1097–98 (N.D. Ill. 2017) (collecting cases awarding monthly compounded interest).  "Prejudgment interest at the market rate puts both parties in the position they would have occupied had compensation been paid promptly."  *Matter of Oil Spill by Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*, 954 F.2d 1279, 1331–32 (7th Cir. 1992) (noting that the prime rate is the best measure of the market rate).  "That is what the victim must pay—either

---

[4] In fact, in that case, U.P. conceded that "the prime rate is a reasonable measure" for prejudgment interest and stated that "compound prejudgment is standard." *See Mlsna*, No. 3:18-cv-00037, Filing No. 297, Defendant U.P.'s Response to Plaintiff's Brief in Support of Damages at 7-8 (W.D. Wis. July 22, 2021).

explicitly if it borrows money or implicitly if it finances things out of cash on hand—and the rate the wrongdoer has available to it." *Id.* at 1332.

Courts may grant prejudgment interest on compensatory damages, and they regularly do. *See, e.g., Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013); *Thomas v. Texas Dep't of Crim. Just.*, 297 F.3d 361, 372 (5th Cir. 2002) (affirming the district court's award of prejudgment interest on the plaintiff's emotional injuries after observing that refusing to grant interest on such an award "ignores the time value of money and fails to make the plaintiff whole."); *see also In re IBP Confidential Bus. Documents Litig.*, 755 F.2d 1300, 1319 (8th Cir. 1985), *on reh'g,* 797 F.2d 632 (8th Cir. 1986) (approving award of prejudgment interest on compensatory damages from the date of injury), *aff'd en banc*, *In re IBP Confidential Bus. Documents Litig.*, 797 F.2d 632 (8th Cir. 1986).

B.    Tax-Related Damages

Successful plaintiffs in employment discrimination often receive lump-sum awards for front pay and back pay covering several years' worth of lost wages and benefits that are not only taxable, but are "taxable as wages in the year received." *E.E.O.C. v. N. Star Hosp., Inc.*, 777 F.3d 898, 904 (7th Cir. 2015). "[A] lump-sum award will sometimes push a plaintiff into a higher tax bracket than he would have occupied had he received his pay incrementally over several years." *Clemens v. Centurylink Inc.*, 874 F.3d 1113, 1116 (9th Cir. 2017). Like awards for back pay and prejudgment interest, tax-enhancement awards are equitable remedies that courts may grant "to restore the employee to the economic status quo that would exist but for the employer's conduct." *See Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 440–42 (3d Cir. 2009) (quoting *In re Cont'l Airlines*, 125 F.3d 120, 135 (3d Cir. 1997)); *Clemens*, 874 F.3d at

5

1116–17. "The resulting tax increase, which would not have occurred had he received the pay on a regular, scheduled basis, will then decrease the sum total he should have received had he not been unlawfully terminated." *N. E.E.O.C.*, 777 F.3d at 904. A monetary award is necessary to offset that tax increase and ensure that the plaintiff is made whole. *See Eshelman*, 554 F.3d at 442.

The great weight of authority supports granting damages to offset increased tax liability. *See Clemens*, 874 F.3d at 1115–17; *N. E.E.O.C.*, 777 F.3d at 903–04; *Eshelman*, 554 F.3d at 440–42; *Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1456 (10th Cir. 1984) (finding that tax component was appropriate exercise of district court's discretion to make victims of discrimination whole); *contra Dashnaw*, 12 F.3d at 1116; *Butler v. Dep't of Just.*, 492 F.3d 440, 445 (D.C. Cir. 2007), *holding modified by Mitchell v. Fed. Bureau of Prisons*, 587 F.3d 415 (D.C. Cir. 2009) (finding no authority for an award of "gross-ups" of backpay to cover tax liability). The Eighth Circuit acknowledges that a tax enhancement remedy is "analogous to the prejudgment remedy as an element of making persons whole for discrimination injuries." *Arneson v. Callahan*, 128 F.3d 1243, 1247 & n.7 (8th Cir. 1997) (reversing district court's award of tax enhancement damages against the federal government on the ground of sovereign immunity but declining to reach the issue of may recover this type of award against private parties).

C.     Front Pay

Front pay is an equitable remedy and may be awarded at the court's discretion. *Standley v. Chilhowee R-IV Sch. Dist.*, 5 F.3d 319, 322 (8th Cir. 1993). The decision to award front pay as well as the calculation of front pay is reviewed for an abuse of discretion. *Dollar v. Smithway Motor Xpress, Inc.*, 710 F.3d 798, 806 (8th Cir. 2013);

6

*see also Standley*, 5 F.3d at 322 (noting that the Appeals Court applies a deferential standard of review to the trial court's decision because the trial court must consider many complicated factors in deciding whether to award front pay).

Courts may award front pay when it is determined reinstatement is no longer feasible. *Dollar*, 710 F.3d at 809 (characterizing awards of front pay as substitutes for reinstatement.). Though awards of front pay are always at least partially speculative, the Eighth Circuit does "not mean to suggest that some unattainable degree of metaphysical certainty is required in order to justify an award of front pay." *Id.* In fashioning equitable relief, the district court may take into account facts that were not determined by the jury, but it may not base its decision on factual findings that conflict with the jury's findings. *Salitros v. Chrysler Corp.*, 306 F.3d 562, 572 (8th Cir. 2002). Because front pay is an equitable remedy, it is appropriate to consider all of the circumstances of a case to assess whether an award is appropriate. *Dollar*, 710 F.3d at 810; *see Ogden v. Wax Works, Inc.*, 29 F. Supp. 2d 1003, 1010 (N.D. Iowa 1998), *aff'd*, *Idaho v. Horiuchi*, 215 F.3d 986, 999 (9th Cir. 2000), *on reh'g*, 253 F.3d 359 (9th Cir. 2001), *vacated as moot*, 266 F.3d 979 (9th Cir. 2001), and *vacated as moot*, 266 F.3d 979 (9th Cir. 2001) (collecting cases from several jurisdictions and discussing commonly applied factors).

Front pay is reasonable where "evidence of hostility between [the plaintiff] and [the defendant is] likely to preclude an amiable employment relationship." *Mathieu v. Gopher News Co.*, 273 F.3d 769, 778 (8th Cir. 2001). "The lack of an available position for plaintiff" is also a key consideration favoring front pay over reinstatement. *McKnight v. Gen. Motors Corp.*, 973 F.2d 1366, 1370–71 (7th Cir. 1992); *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1331 (7th Cir. 1987), *cert. granted, judgment vacated,* 486 U.S.

7

1020 (1988) ("[A] reduction-in-force may make reinstatement infeasible."). In determining whether to award front pay, a "district court [i]s not required to hold a hearing." *Moysis v. DTG Datanet*, 278 F.3d 819, 829 (8th Cir. 2002). The evidence presented at trial is typically sufficient to support the Court's exercise of equitable discretion. *Salitros*, 306 F.3d at 572.

III.    DISCUSSION

The Court first finds that the average prime rate is an appropriate rate for prejudgment interest. That rate represents the cost to the plaintiff of the loss of use of the money that was wrongfully withheld from him. The Court also finds it appropriate to award prejudgment interest on compensatory damages. Denying interest on Sanders's emotional distress damages would not make him whole. The injury that entitles Sanders to damages for emotional distress—the stress and anxiety he experienced as a result of U.P. discriminatory conduct—is readily ascertainable and interest should commence at the time of that injury, when U.P. did not allow Sanders to return to his job August 2018.

The Court next finds that Sanders has shown he is entitled to additional damages to make up for the increased tax liability he faces in connection with the lump-sum award. The Court does not agree that the Eighth Circuit would side with the minority position on that issue. The rationale expressed by the Tenth Circuit—that there is no authority for a gross-up for taxes—*see Dashnaw*, 12 F.3d at 1116, carries little weight given the decisions of the other Circuits. *See Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96 CIV. 8414, 2016 WL 11485633, at *16 (S.D.N.Y. June 13, 2016). The Court finds that, if presented with the question, the Eighth Circuit would likely join the Third, Seventh, Ninth, and Tenth Circuits in finding that a tax adjustment

8

award to offset the negative tax effects of a lump sum payment in one year rather than over several years is appropriate equitable relief to make a plaintiff whole in an employment discrimination case.  *See Clemens*, 874 F.3d at 1115–17; *N. E.E.O.C.*, 777 F.3d at 903–04; *Eshelman*, 554 F.3d at 440–42; and *Sears*, 749 F.2d at 1456.

The Court finds that Sanders met his burden to show he is entitled to tax-related relief with expert evidence of the amount he is entitled to and how that amount was calculated.  Union Pacific has not challenged those calculations, nor has it presented an alternative proposal.  The Court will therefore adopt Sanders's uncontested and well-supported request for tax-related relief.

The Court also reject's the Railroad's contention that Sanders is not entitled to front pay, or that a hearing on the issue is necessary.  At trial, Sanders testified he wanted to continue working until he reached age 70.  The jury apparently credited that testimony.  The jury effectively rendered an advisory opinion on the amount of Sanders's future damages for wages and benefits.  The evidence presented at trial supports the jury's calculation.  The Court finds, based on evidence presented at trial, that reinstatement would not have been an adequate remedy in Sanders's case. Although Sanders testified that he wants his job back, Union Pacific has never offered him reinstatement.  Moreover, Sanders's position as a foreman general in the carman department has been eliminated.  Also, the evidence shows there is sufficient friction, animosity, disagreement, or hostility between Sanders, his supervisor, the U.P. health department, and U.P. management to make reinstatement an inadequate remedy.

Further, the Court finds the defendant's argument in favor of a present-value adjustment is unavailing.  The Court instructed the jury to determine the amount of money that would compensate Sanders for the present value of his lost wages and

benefits.   "Jurors are presumed to follow the court's instructions." *United States v. Patterson*, 684 F.3d 794, 799 (8th Cir. 2012).   Accordingly, the Court assumes that the adjustment has already been made.  U.P. had an opportunity to object to the instruction or to offer evidence or argument on present value calculations but did not do so. Accordingly,

IT IS ORDERED:

1.      The plaintiff's motion to amend the judgment (Filing No. 123) is granted; plaintiff Sanders is awarded $48,972.30 in prejudgment interest on back pay and lost benefits, $12,876.97 in prejudgment interest on compensatory damages, and $181,682.00 in tax-related damages.

2.      U.P.'s motion to amend the judgment (Filing No. 127) is denied.

3.      A supplemental judgment will be issued.

Dated this 17th day of August 2022.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge