IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ALLAN SANDERS,<br><br>    Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD CO.,<br><br>    Defendant. | 4:20CV3023<br><br>**MEMORANDUM AND ORDER** |

Before the Court is Plaintiff, Alan Sanders's Supplemental Motion for Attorney's Fees and Costs. Filing No. 193. This long running Americans with Disabilities Act ("ADA") case returns to the Court after the Eighth Circuit affirmed judgment in Sanders's favor. Sanders now moves for fees and costs incurred during post-trial motion practice and appeal under the ADA's fee shifting provision. 42 U.S.C. § 12205. Finding the rates charged and hours expended reasonable, the Court grants Sanders's motion in full and awards $337,920.00 in attorneys' fees and $10,036.72 in costs.

**BACKGROUND**

This is one of dozens of ADA cases involving Union Pacific Railroad Company's ("U.P.'s") return to duty process pending in this district and across the country. Sanders is a former U.P. employee who was terminated because of perceived limitations on his cardiovascular functioning. *Sanders v. Union Pac. R.R. Co.*, 108 F.4th 1055, 1059 (8th Cir. 2024). During the return to duty fitness evaluation, U.P. refused to accommodate a separate knee injury. *Id.* Sanders sued under the ADA and jury found in his favor. *Id.* at 1060. Pretrial litigation was extensive, hard-fought, and raised unsettled and important

1

questions about the scope of the ADA. The Court previously granted reasonable fees for work performed prior to April 1, 2022. Filing No. 176.

After Sanders filed his first motion for fees, the parties engaged in post-trial motion practice. U.P. opposed Sanders's request for fees and moved for judgment as a matter of law, arguing the evidence presented at trial did not give rise to a violation of the ADA. Filing No. 124 (Judgment as a Matter of Law); Filing No. 155 (opposition to fees). In parallel, Sanders moved for additional monetary relief, including costs that were initially omitted from the Court's order and interest. Filing No. 123; Filing No. 129. During the peak of post-trial motion practice, the parties were filing a brief every week. Moreover, like the pretrial litigation, the post-trial motion practice raised unsettled issues of ADA law that bore on the many similar cases pending in this district. Ultimately, the Court granted Sanders's motion for fees, denied U.P.'s Rule 50(b) motion, granted Sanders's motion for additional monetary relief, and entered final judgment on the jury verdict. Filing No. 172 (Judgment as a Matter of Law); Filing No. 174 (Motion to Amend); Filing No. 176 (Motion for Attorney's Fees); Filing No. 177 (Judgment). The parties agreed to defer further fee litigation until the matter was resolved by the Eighth Circuit on appeal.

On appeal, the Eighth Circuit affirmed. *Sanders*, 108 F.4th at 1059. The case resolved several important questions of ADA law and gave the district courts substantial guidance in resolving ADA cases based on U.P.'s return to duty procedures. *See id.* at 1060–61 (resolving common questions about whether U.P. plaintiffs are disabled or regarded as disabled); *id.* at 1062 (rejecting U.P.'s argument that animus against the disabled is required to recover); *id.* (clarifying the direct threat defense under the ADA). Highlighting the importance of the case, the EEOC appeared as an amicus in support of

2

Sanders. *Id.* at 1058. Overall, like the district court litigation, the appeal was skillfully litigated by both sides and resolved high stakes issues of ADA law for the circuit.

Sanders requests the following fees for work performed between April 1, 2022 (the date of the first motion for fees and costs) and December 13, 2024 (the date of the reply brief deadline for the supplemental motion for fees):

| Timekeeper | Rate | Hours Billed | Total |
|---|---|---|---|
| Nick Thompson (Casey Jones Law) | $475/hour | 77.7 | $36,907.50 |
| Adam Hansen (Apollo Law) | $475/hour | 266.3 | $126,492.50 |
| Emma Freeman (Apollo Law) | $375/hour | 0.8 | $300 |
| Eleanor Frisch (Apollo Law) | $375/hour | 58.9 | $22,087.50 |
| Colin Reeves (Apollo Law) | $325/hour | 468.1 | $152,132.50 |
| Total | n/a | 871.80 | $337,920.00 |

Nick Thompson of Casey Jones Law specializes in railroad claims and represented Sanders throughout discovery and was lead trial counsel. Filing No. 195-7 at 4–5. Apollo Law is a plaintiff's side appellate specialty firm. Filing No. 195-1 at 1. Adam Hansen was the lead appellate counsel. *Id.* at 14–17. Eleanor Frisch, Colin Reeves, and Emma Freeman were associates involved in the case. *Id.*

Sanders also requests the following costs associated with post-judgment motion practice and appeal:

| Expense Category | Costs |
|---|---|
| Oral Argument Travel Expenses (travel, lodging, and food) | $3,654.77 |
| Expert Retention Costs (Jeffery Opp) | $1,316.25 |
| Other Litigation Expenses (transcript, printing and research costs) | $5,065.70 |
| Total | $10,036.72 |

The travel expenses were associated with Thompson and Hansen's trip to Omaha to present oral argument. Filing No. 195-1 at 16; Filing No. 195-5 (itemizing costs). Sanders provided evidence of these costs. Filing No. 195-6. Jeffery Opp was a tax expert retained in connection with Sanders Motion to Amend the Judgment to Include Prejudgment Interest and Tax-Related Damages, whose opinion was presented to the Court at Filing No. 126-2.

## LEGAL STANDARD

The ADA's fee shifting provision allows the Court, "its discretion" to "allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 12205.

The ADA's fee shifting provision is interpreted consistently with other fee shifting provisions under federal law, including 42 U.S.C. § 1988. *Bill M. ex rel. William M. v. Nebraska Dep't of Health & Hum. Servs. Fin. & Support*, 570 F.3d 1001, 1003 n.2 (8th Cir. 2009). To recover fees under § 12205, Sanders must show: (1) he is the prevailing party, and (2) the requested fees are reasonable. *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 649–50 (8th Cir. 2022). The Court has discretion in determining whether to award fees and the amount of a fee award based on the circumstances of the case. *Id.* The Court's ultimate fee determination is driven by: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with

4

the client; and (12) awards in similar cases." *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.4 (1983).

The Court's analysis of whether the requested fees are reasonable begins with the lodestar or a reasonable hourly rate multiplied by a reasonable number of hours expended. *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019). The lodestar is "the guiding light of our fee-shifting jurisprudence" and the Court should only deviate from that number in exceptional circumstances. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52 (2010). The prevailing rate in the community for similar legal services is highly likely to be reasonable. *Id.* at 551–53. The Court may rely on its experience and knowledge of prevailing market rates in determining a reasonable rate. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). In determining a reasonable fee, the Court may discount hours from the loadstar calculation "when recordkeeping is poor or block billing submitted," the hours show "inefficiency or duplication of services in cases where more than one attorney is used," or the hours reflect "purely clerical tasks." *Gruttemeyer*, 31 F.4th at 651 (quoting *L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995)). The Court may consider the content of any contingency fee agreement to "aid in determining reasonableness" but fees a lawyer would be entitled to under a contingency fee agreement are not an automatic ceiling on an award of attorney fees. *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989).

The ADA allows for recovery of costs by the prevailing party. 42 U.S.C. § 12205 ("In any action . . . commenced pursuant to th[e ADA], the court . . . in its discretion, may allow the prevailing party . . . reasonable . . . litigation expenses, and costs."). Out of

5

pocket costs associated with attorney travel are recoverable under § 12205. *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008).

## DISCUSSION

At the onset, both parties agree that Sanders, who won at trial and on appeal, is a "prevailing party" allowed reasonable fees under 42 U.S.C. § 12205, but disagree on the amount of fees owed. Therefore, the Court proceeds to the lodestar analysis.

### A. Reasonable Rate

Sanders's counsels' proposed rates are reasonable. The reasonableness of an attorney's rate "is determined by reference to the marketplace." *Tabech v. Gunter*, 869 F. Supp. 1446, 1456 (D. Neb. 1994). An attorney's customary hourly rate is a starting point for the reasonableness inquiry, guided by the Court's knowledge of the local legal market. *Hanig*, 415 F.3d at 825. Here, the proposed rates are $25 more than rates Court previously determined were reasonable. *See* Filing No. 176. The same considerations are at play here. Sanders's counsel are experienced appellate and railroad industry attorneys. Filing No. 195-1 at 1–7; Filing No. 195-7 at 2–4. They achieved an extremely successful outcome for their client and other similarly situated parties. Counsel discounted their customary hourly rate to account for local norms. Filing No. 195-1 at 11. Plaintiff-side employment lawyers who work in the Omaha market opined that Counsel's rates are reasonable. Filing No. 195-8 and Filing No. 195-9. Counsel's rates are commensurate with the rates charged by experienced and talented defense counsel. Filing No. 195-1 at 13–14.

The increase in rate is also reasonable. The court may award fees at a higher rate on a supplemental fee petition to account for changes created by the passage of time,

including increased experience of counsel, inflation, and changes to the costs of operating a law firm. *See e.g.,* *Joe Hand Promotions, Inc. v. Cantina El Sol, LLC*, No. 8:22-CV-113, 2023 WL 4295507, at *4 (D. Neb. June 30, 2023) (inflation); *City of Almaty, Kazakhstan v. Ablyazov*, No. 15CV05345AJNKHP, 2020 WL 5440553, at *4 (S.D.N.Y. Sept. 10, 2020) (increased experience); *Gonzalez v. Bratton*, 247 F. Supp. 2d 432, 435 (S.D.N.Y. 2003) ("higher costs of doing business"). Here, Sanders's counsel customary rates have increased since the court's prior ruling on fees in part due to notable successes in the courts of appeal and academic appointments. Filing No. 195-1 at 11–12. Moreover, in the past two years the cost of living and operating a law firm has increased in a manner that tracks to the proposed higher rates. *Id.* Finally, even with a small $25 increase counsel's rates remain below their customary rates and are reasonable according to prevailing market norms. Therefore, the Court concludes an increase of $25 per hour from the initial fee award is warranted and the proposed rates are reasonable.

### B. Reasonable Hours

The Court concludes the hours expended were reasonable for many of the same reasons as the initial fee order. This was a complex case, hard fought by talented counsel on both sides. U.P. vigorously litigated the post-trial motions and the appeal. The case raised novel issues that affected many pending cases across the country. Counsel achieved excellent results for Sanders, winning on every issue in front of the Court and the Eighth Circuit. *See* Filing No. 172 (denying U.P.'s Motion for Judgment as a Matter of Law); Filing No. 174 (granting Sanders's Motion to Amend the Judgment and awarding interest and tax-related damages); Filing No. 176 (granting Sanders's Motion for Attorney's Fees); *Sanders*, 108 F.4th at 1064 (affirming judgment in Sanders's favor).

Courts have awarded fees on a similar number of hours. *See cases cited* Filing No. 194 at 5–6. Counsel used their billing judgment to remove entries reflecting duplicative and administrative tasks and work performed by interns and support staff. Filing No. 195-1 at 15; Filing No. 195-7 at 7. The Court has reviewed the hours expended and time entries and finds the time spent was reasonably expended and properly documented. Filing No. 195-4; Filing No. 202-2. Given the complexity of the case, importance of the issues, the specialized skills and knowledge of counsel, and, most importantly, the excellent results achieved, the Court concludes the hours expended are reasonable.

### C. U.P.'s Arguments for Departing from the Lodestar

U.P.'s arguments for departing from the lodestar and cutting fees by 40% across the board are unavailing.

First, U.P. argues fees should be reduced because counsel spent a similar number of hours litigating post-trial motions and the appeal as trial. Filing No. 198 at 5–7. Vigorously litigating a case takes time, and, as the party who continued to fight hard after a jury verdict, U.P. cannot complain now that the bill has come due. Appellate work is time-consuming, complex, and risky (an errant district court decision is substantially less disruptive than a circuit court one). There is nothing inherently unreasonable about spending a similar amount of time on appeal than at the trial court. *See Bridgeport Music, Inc. v. Smelzgood Ent., Inc*, No. 3:01-780, 2010 WL 11619611, at *2 (M.D. Tenn. Apr. 19, 2010) (making a similar point). More to the point, courts have awarded Sanders's counsel fees based on hours like the 404.6 hours claimed here. *See e.g., Mlsna v. Union Pac. R.R. Co.*, No. 18-CV-37-WMC, 2023 WL 4488912 (W.D. Wis. July 12, 2023) (357.9 hours on appeal); *Peterson v. Nelnet Diversified Sols., LLC*, No. 17-CV-01064-NYW, 2022 WL

408241 (D. Colo. Feb. 10, 2022) (319.6 hours on appeal); *Monroe v. FTS USA, LLC*, No. 208CV02100JTFCGC, 2020 WL 13227389 (W.D. Tenn. Oct. 13, 2020) (2,092.3 in a more complex appeal). Therefore, the number of hours spent on post-verdict litigation and on appeal were not unreasonable because they mirrored the time spent prior to and at trial.

Second, U.P. argues the time expended was unreasonable because Plaintiff's counsel spent more time on post-judgment motion practice and appeal than U.P.'s counsel. Filing No. 198 at 4–5. This is a non sequitur. "The number of hours defense counsel spent on a case in which he did not prevail neither confirms nor calls into question the reasonableness of opposing counsel's hours." *Disability Rts. Texas v. Bishop*, No. 1:21-CV-124-H, 2023 WL 11884748, at *7 (N.D. Tex. Mar. 21, 2023). Indeed, Sanders won on all post-trial motions and on appeal, meaning "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Simply put, the time spent by U.P., the non-prevailing party, is not especially helpful for determining whether Sanders's counsels' hours are reasonable.

Third, U.P. argues the fee award is unreasonable because it would give counsel a greater recovery than the 40% of the award allowed under the contingency fee agreement. Filing No. 198 at 6–7. The Court disagrees because even if the total fees exceeded the 40%, "a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees." *Blanchard*, 489 U.S. at 93. Given the elaborate procedural history, complexity of the appeal, and excellence of results the Court finds the requested fees reasonable, notwithstanding the provision of the contingency agreement.

Fourth, U.P. argues that counsel's descriptions are too vague to allow for detailed analysis of the time spent. Filing No. 198 at 7–8. A time entry in a petition for fees should "identify the general matter of [counsel's] time expenditures" to "enable a reviewing court to identify distinct claims" and assess the reasonableness of the fee request. Hensley, 461 U.S. at 437 & 437n.12 (1983). Here, the court had no trouble understanding what work was performed during a given time block nor assessing whether the time was reasonably expended. Nor is it inherently problematic that certain tasks were performed in several chunks because it is common to be interrupted while working on a task and the overall amount of time spent on those tasks were reasonable. U.P.'s assertion that counsel's billing records are "vague and inadequate" finds no support in the record.

Finally, U.P. argues there was improper duplication of work. Specifically, U.P. argues that trial counsel, Thompson, appeared too frequently in post-trial billing records. Filing No. 198 at 9–10. The Court disagrees that this is a problem. "Where more than one attorney represents the prevailing party, the contribution of all attorneys must be taken into consideration and the fees awarded should reflect the efforts of all, at least to the extent that the time reported does not reflect duplication of effort or work that would be performed by nonlawyers." L.B., 56 F.4d at 863–64 (quoting Reynolds v. Coomey, 567 F.2d 1166, 1167 (1st Cir. 1978). Here, the attorneys each brought different perspectives to the work and did not duplicate efforts. Filing No. 195-7. Thompson was the trial counsel responsible for developing the factual record and litigating the case to trial. Id. He specialized in railroad industry claims and has specialized expertise about the railroad industry. Id. It is entirely appropriate to employ both trial counsel, with greater knowledge of the record and industry at issue, and a jack of all trades appellate specialist to ensure

success on appeal. Moreover, Thompson was an active participant on the appellate team and made a "distinct contribution" to the appeal. *Strickland v. Alexander*, No. 1:12-CV-02735-MHS, 2016 WL 690894, at *4 (N.D. Ga. Jan. 12, 2016) (awarding fees for non-arguing attorneys who assisted in the preparation for oral argument). More to the point, the record does not support U.P.'s contention that Thompson participated too much post-trial, given he accounted for less than ten percent of the hours expended post-trial. As for oral argument attendance, the Eighth Circuit is clear "In a case of . . . complexity and magnitude, it [is] not unreasonable . . . to send two attorneys to attend oral argument." *Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 995 (8th Cir. 2012). As discussed above, the issues in this case were complex and significant given the proliferation of U.P. return to duty cases across the country. Given the contributions of Thompson to the appeal, the Court finds no basis for exclude the hours expended by Thompson post-trial for the lodestar calculation.

U.P.'s arguments provide no basis to depart from the lodestar. Sanders is entitled to $337,920.00 in fees.

### D. Costs

The Court has reviewed the costs submitted by Sanders and concludes they are reasonable. Specifically, counsel requests reimbursement for the costs associated with travel to Omaha for oral argument, expert witness fees associated with post-trial motion practice, and miscellaneous appellate fees. The Court finds each category is compensable under the ADA because they are "reasonable . . . litigation expenses, and costs." 42 U.S.C. § 12205. Other courts agree. *Sturgill*, 512 F.3d at 1036; *Lovell v. Chandler*, 303 F.3d 1039, 1058–59 (9th Cir. 2002) (expert costs); *McDowell v. Safeway*

*Stores, Inc.*, 758 F.2d 1293, 1294 (8th Cir. 1985) (trial transcript); *Restivo v. Nassau Cnty.*, No. 06-CV-6720(JS)(SIL), 2019 WL 111048, at *3 (E.D.N.Y. Jan. 4, 2019) (appellate printing). Therefore, the Court finds Sanders's requested costs reasonable.

U.P.'s arguments to the contrary are unavailing.

First, U.P. cites no authority (and the Court identified none) supporting its assertion that Jeffery Opp's expert witness costs are not compensable because he was not identified as an expert under Fed. R. Civ. P. 26. The text of 42 U.S.C. § 12205 does not make this distinction. The services of a non-testifying expert or an expert retained for proceedings other than trial (such as a Sanders's post-trial motion practice) are expenses incurred during litigation and thus fall within the scope of § 12205's express language as "reasonable . . . litigation expenses." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) ("[Courts] do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply."); *Southall v. USF Holland, Inc.*, No. 3:15-CV-01266, 2021 WL 1397221, at *14 (M.D. Tenn. Feb. 10, 2021) (awarding expert witness costs for a witness who was not disclosed under Rule 26).

Second, the Court concludes Thompson's travel fees are compensable, notwithstanding U.P.'s objections to duplicative work, for the same reason it awarded fees. Specifically, Thompson was an important part of the appellate team, his attendance at oral argument was reasonable, and U.P. provides no basis to conclude counsel in a complex case are only allowed the travel expenses for a single attorney.

Therefore, Sanders is awarded $10,036.72 in costs.

13

## CONCLUSION

Sanders's fees and costs, while high, are reasonable for vigorously litigated case involving important and unsettled issues.

THEREFORE, IT IS ORDERED:

1. Sanders's Supplemental Motion for Fees and Costs, Filing No. 193, is granted. U.P. shall pay Sanders $337,920.00 in fees and $10,036.72 in costs.

2. A separate judgment memorializing the Court's resolution of the costs and fees issue will be issued contemporaneously with this Memorandum and Order.

Dated this 14th day of January, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge